IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00605-RM-MJW

JOSHUA LAMONT SUTTON,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS (CDOC),
VAUGHN, Mrs.,
BOLTON, Mrs.,
GRANT, Mrs.,
HEALY, Mrs.,
O'BRIAN, Mrs.,
GEBHART, Mr.,
JASON LENGERICH,
BRUNELL, Mr.,
GILLIS, Mr.,
SCAMPA, Mrs.,
LAGUE, Mr.,
WOOD, Mrs.,
LORENZE, Mrs.,
LONG, Mr.,
FOWLER, Mr.,
JIMERSON, Mr.,
OWENS, Mr., and
LISAC, Mr.,

Defendants.

---

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS (DOCKET NO. 26)
## AND
## PLAINTIFF'S MOTION FOR LEAVE OF COURT TO AMEND AND SUPPLEMENT
## COMPLAINT (DOCKET NO. 35)

---

**Entered by Magistrate Judge Michael J. Watanabe**

This case is before the Court pursuant to an Order Referring Case entered by

Judge Raymond P. Moore on March 13, 2017. (Docket No. 7.) Now before the Court

are two motions which have been referred (Docket Nos. 28 & 36) to the undersigned Magistrate Judge:

- Defendants Colorado Department of Corrections ("CDOC"), Vaughn, Bolton, Grant, Healy, O'Brien, Gebhart, Lengerich, Brunell, Gillis, Scanga, Lague, Wood, Lorenze, Long, Fowler, Jimerson, Owens, and Lisac's (collectively "Defendants") Motion to Dismiss (Docket No. 26), to which Plaintiff Joshua Lamont Sutton ("Plaintiff") filed a response (Docket No. 33); and

- Plaintiff's Motion for Leave of Court to Amend and Supplement Complaint (Docket No. 35), to which Defendants filed a response (Docket No. 37), and Plaintiff filed a reply (Docket No. 40).

The Court has carefully considered the motions. The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## I. Motion to Amend (Docket No. 35)

The Court will first address Plaintiff's Motion for Leave of Court to Amend and Supplement Complaint (Docket No. 35), because if this relief is granted, Defendants' motion to dismiss is moot. *See, e.g., Strich v. United States*, No. 09-cv-01913-REB-KLM, 2010 WL 14826, at *1 (D. Colo. Jan. 11, 2010) (citations omitted) ("The filing of an amended complaint moots a motion to dismiss directed at the complaint that is supplanted and superseded.").

Rule 15(a) provides that leave to amend "shall be freely given when justice so

2

requires." Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc*., 3 F.3d 1357, 1365 (10th Cir. 1993). A finding of undue delay may be appropriate where the facts or claims sought to be added were available to the movant at the time the original pleading was filed, or where the movant fails to offer a reasonable justification for why it did not seek amendment earlier. *Sipp v. Unumprovident Corp*., 107 Fed. App'x. 867, 876–77 (10th Cir. 2004) (unpublished), (citing *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)).

Based upon this standard, Plaintiff's motion to amend, filed December 22, 2017, is untimely, and the Court recommends that the proposed amendments be denied. This case was filed on March 7, 2017. (Docket No. 1.) Plaintiff amended his Complaint once as a matter course on March 27, 2017. (Docket No. 18.)[1] On May 15, 2017, Defendants filed their Motion to Dismiss. (Docket No. 26.) In response, on May 30, 2017, Plaintiff indicated that he planned to file another motion to amend his Amended Complaint. (Docket No. 33.) That motion to amend was not filed until December 8, 2017, more than six months later. The proposed amendments cover the same time period and relate to the same facts as those giving rise to his original Complaint. Plaintiff has failed to provide any justifiable reason (or, for that matter, any reason at all) for his undue delay

---

[1] Pursuant to the Court's Minute Order dated March 28, 2017 (Docket No. 17), the operative Amended Complaint (Doc. 18) consists of Plaintiff's original Complaint (Docket No. 1) and his notice supplementing the Complaint. (Docket No. 16.)

and failure to file a timely motion for leave to amend his complaint and to join new defendants. *See Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994).

Furthermore, prejudice to the nonmoving party is the most important factor in considering whether amendment should be permitted. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "As a general rule, the risk of substantial prejudice increases with the passage of time." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1488, at 670. Given the length of time Defendants' Motion to Dismiss (Docket No. 26) was pending before Plaintiff filed his untimely motion to amend, the Court finds that Defendants would be prejudiced by allowing Plaintiff to further amend his pleadings.

Finally, Plaintiff's proposed amendments fail to rectify the pleading deficiencies that are discussed below. For example, Plaintiff's proposed Claims Three and Four are brought against an undifferentiated list of over 30 individual defendants, including new parties like "PREA" and the Colorado Attorney General's Office. (Docket No. 35 at p. 5.) Both claims cover a period of time between "Nov. 1, 2015 through about April 1, 2017, and likely to continue thereafter," and both appear to name the defendants in the alternative, with the use of "and/or." (*Id.*) Similarly, Claim One alleges that Defendants "Lengerich and or [sic] Lish" violated his constitutional rights. (*Id.* at p. 15.) Such claims are impermissibly vague and provide no basis by which a defendant could determine whether those claims are asserted against him or her. In short, Plaintiff's proposed amendments generally mirror the allegations made in his Amended Complaint, with

additional individuals merely added to the various groups of wrongdoers. Plaintiff's failure to sufficiently identify the Defendants that personally participated in the claims would require dismissal of those claims. *See Schaal v. Fender*, No. 06-cv-01748-MSK-MJW, 2009 WL 1244183, at *4 (D. Colo. May 4, 2009).

Accordingly, the Court recommends that Plaintiff's Motion for Leave of Court to Amend and Supplement Complaint (Docket No. 35) be denied as untimely, prejudicial, and futile.

## II. Motion to Dismiss (Docket No. 26)

Defendants move to dismiss Plaintiff's Amended Complaint (Docket No 18) for lack of subject matter jurisdiction and for failing to state claims upon which relief can be granted.

## a. Factual Background

Unless otherwise noted, the allegations below are taken from the Amended Complaint (Docket No. 18), and described in the light most favorable to Plaintiff.

Plaintiff is an inmate who deals with post-traumatic stress disorder ("PTSD") stemming from physical, psychological, and sexual abuse. (Docket No. 18 at p. 6.) In 2016, he was placed for treatment in the Therapeutic Community Program ("TC") at the Buena Vista Correction Complex ("BVCC"). (*Id.*) Plaintiff alleges that he was subjected to "bad treatment" while in this housing unit which "result[ed] in a relapse of the symptoms" of his PTSD, anti-social personality disorder, and substance abuse disorder. (*Id.* at p. 6-7.) The "bad treatment" being that inmates in Plaintiff's TC housing unit were forced to undress and use the toilet in their cells in full view of female staff because the

cell walls and doors consisted only of bars.

Plaintiff divides the Defendants into three groups.[2] First, he claims that Defendants Vaughn, Bolton, Grant, Healey, O'Brien, and Gebhart, whom he labels the "Group One" Defendants, were aware of Plaintiff's history of sexual, physical, and psychological abuse. (*Id.* at 7.) Nevertheless, these Defendants "ignored or have supported security staff's forcing" Plaintiff to use the toilet or undress in view of female staff. (*Id*. at p. 8.) At the same time, however, Plaintiff states that "the same Group One Defendants have repeatedly said to all of the prisoners during the [TC]'s weekly meetings that they are also humiliated daily" by having to hold TC sessions outside of Plaintiff's cell, where his only toilet is located. (*Id.*) These Defendants encouraged Plaintiff and other prisoners to complain about unit's cell conditions. (*Id.*) Thereafter, Plaintiff raised his objections to the BVCC's Prison Rape Elimination Act ("PREA") investigator. (*Id.*)

Defendant Lengerich, the BVCC warden, was informed by PREA investigators that while "the front wall of the cell doors was covered enough with curtains he had given" to the inmates, "he needed to provide similar protection for each of [the] cell doors" in the TC unit. (*Id.* at pp. 8-9.) For eight months, Defendant Lengerich refused to provide the PREA-compliant curtains. (*Id.* at p. 9.) After Plaintiff began complaining again, on October 25, 2016, Defendant Lengerich ordered the "Group Two Defendant(s) and or [sic] the Group Three Defendant(s)" to remove the "top-half cell-

---

[2] The Court notes that Defendants CDOC, Lengerich, Brunell, Wood, Lorenze, and Lisac do not appear to be a part of any the groups of Defendants identified by Plaintiff.

wall curtains" from the cells in Plaintiff's unit "because we were complaining so much." (*Id.*)[3] Plaintiff reported subsequent threats made by other inmates, who blamed him for the removal of the curtains, to the Group Two Defendants. (*Id.*) He was later involved in a physical altercation with another offender, resulting in torn shoulder muscles. (*Id.*)

On November 1, 2016, Defendant Long took the TC unit's bottom-half cell curtains as well. (*Id*. at 10.) In response, Plaintiff showed the Group Three Defendants a filing by the Colorado Attorney General's office in Plaintiff's other pending case, which acknowledged that it may be a constitutional violation to allow female staff members to regularly see male prisoners undressed. (*Id.*) The Group Three Defendants agreed that the objectionable practice was, in fact, occurring in Plaintiff's living unit, but did not take any action to provide privacy curtains. (*Id.*) Defendant Owens "openly bragged" about confiscating the curtains. (*Id*. at pp. 10-11.) Defendant Jimerson told Plaintiff that "he will not do anything to stop us from being seen undressed by female staff" until he received a letter from the Colorado Attorney General commanding him otherwise. (*Id*. at p. 11.) Defendant Lisac, the PREA administrator, refused to answer inmates' requests for a PREA investigation. (*Id*.). Defendant Lengerich ordered the light wattage be increased in their cells from five watts to eighty watts to "punish us for complaining." (*Id*.) Defendant Wood stated that the curtains were removed for privacy purposes, but Plaintiff believes that he was housed in the least restrictive unit and that other units at BVCC had privacy curtains. (*Id.* at pp. 12-13.)

---

[3] Plaintiff identifies the "Group Two" Defendants as Defendants Gillis, Scanga, and LaGue, and the "Group Three Defendants" as Defendants Long, Fowler, Jimerson, and Owens. (Docket No. 18 at p. 1.)

Plaintiff asserts the following claims in the Amended Complaint:

- Defendants violated his Eighth Amendment right to humane conditions of confinement by exposing him on a daily basis to observation by female staff members while he used the toilet in his cell or undresses, which has exacerbated his PTSD, causing him to suffer from panic and anxiety attacks (Claims One and Two);

- Defendants violated his Eighth Amendment right to humane conditions of confinement because Defendants' retaliatory acts in removing the privacy curtains that were previously in place in response to Plaintiff's repeated complaints have angered other inmates in the housing unit to the extent that another inmate attacked him physically, tearing Plaintiff's shoulder muscles (Claim Three);

- Defendants violated his constitutional right to bodily privacy by exposing him on a daily basis to observation by female staff members while he used the toilet in his cell or undresses (Claim Four); and,

- Defendants have violated his Fourteenth Amendment due process and equal protection rights (Claims Five and Six).

## b. Legal Standard

### i. *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007)

(citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### ii. Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss pursuant to Rule 12(b)(1) take two forms. First, a party may attack the facial sufficiency of the complaint, in which case the court must accept the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the Court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence

outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

### iii. Failure to State a Claim Upon Which Relief Can Be Granted

As recently formulated by Judge Moore:

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it does not plead enough facts to state a claim to relief that is plausible on its face. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss. Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.

. . .

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in a plaintiff's favor. However, when legal conclusions are involved in the complaint the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to those conclusions. Accordingly, in examining a complaint under Rule 12(b)(6), the court will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.

*Watts v. Donley*, No. 15-cv-00320-RM-KLM, 2015 WL 2330019, at *3-4 (D. Colo. May 14, 2015) (internal citations, quotation marks, and alterations omitted).

**c. Analysis**

**i. CDOC and Eleventh Amendment Immunity**

Defendant CDOC enjoys Eleventh Amendment immunity from suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988); *Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988). Therefore, CDOC is an improper party and all claims against it should be dismissed.

**ii. Plaintiff's Request for Injunctive Relief**

In his "Request for Relief," Plaintiff seeks, in addition to compensatory and punitive damages, declaratory and injunctive relief against "CDOC and or [sic] other Defendant(s)." (Docket No. 18 at p. 8.) Plaintiff's Amended Complaint incorporates by reference a contemporaneously-filed "Emergency Motion for T.R.O. (Temporary Restraining Order) and/or Preliminary Injunction; Alternatively, Writ of Habeas Corpus Ad Testificandum and/or Subpoena(s) – Due to Continuous Retaliation." (Docket No. 18 at p. 13.) The emergency motion (Docket No. 2) was denied as moot on May 23, 2017, because Plaintiff had been moved from the BVCC to the Arrowhead Correctional Center (AHCC) in Canon City. (Docket No. 31.) As Judge Moore stated in that Minute Order, the injunctive relief sought by Plaintiff is specific to his conditions at the BVCC, and his transfer from that facility moots his claims. *See City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) ("Our Article III case-or-controversy requirement continues through all stages of federal judicial proceedings. . . . In general a case becomes moot when the issues presented are no longer live or the parties lack a legally

cognizable interest in the outcome.") (internal quotation marks omitted). Without a live, concrete controversy, the Court lacks jurisdiction to consider Plaintiff's claims, no matter how meritorious. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). Accordingly, Plaintiff's claims for injunctive relief should be dismissed for lack of jurisdiction.

### iii. Personal Participation

Plaintiff brings his claims under Section 1983, which provides a remedy for constitutional violations committed by state or private actors under color of state law. *See* 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (alteration in original) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). To state a claim under Section 1983, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Allegations that generally refer to "defendants" are "not sufficient to show how [an individual] 'might be individually liable for deprivations of [a plaintiff's] constitutional rights.'" *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quoting

*Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Personal participation requires an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations and quotations omitted); *Dodds v. Richardson*, 614 F.3d 1185, 1200-1201 (10th Cir. 2010).

Pursuant to Rule 8, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to state a cognizable claim in federal court that complies with Rule 8, "Plaintiff must describe briefly, plainly, and adequately the specific legal right allegedly violated and **all relevant facts** that support each claim, which includes explaining **what each named defendant did to him; when the defendant did it; and how the defendant's action harmed him**." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (emphasis added). S*ee also Robbins*, 519 F.3d at 1250 (a complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state"). In deciding whether a Section 1983 claim may proceed against an individual defendant at the motion to dismiss stage, "[a court] must examine the allegations in the complaint as to each individual [defendant] to determine whether a plausible claim for relief is stated." *Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013). Where a complaint uses generic collective terms, "'but with no distinction as to what acts are attributable to whom,' [a] [c]ourt will not speculate as to what acts a particular defendant is alleged to have

committed." *New Mexico ex rel. Foy v. Vanderbilt Capital Advisors, LLC*, No. CIV 09–0178 RB, 2009 WL 3672921, at *4 (D. N.M. Apr. 13, 2009) (quoting *Robbins*, 519 F.3d at 1250).

After reviewing the Amended Complaint, it is obvious that besides Defendant Lengerich and some of the Group Three Defendants, Plaintiff does not state specific facts to show how each of the other named Defendants personally participated in the alleged constitutional violations. Defendant Brunnell does not appear anywhere apart from the Amended Complaint's caption and "Parties" section. Defendant Lorenze is mentioned only once–and not in the body of the Amended Complaint, but in an exhibit–as someone who had denied him an informal grievance form. (Docket No. 1-2.) Defendant Wood is only alleged to have informed Plaintiff that the curtains were taken down for security purposes. The Court cannot see anything that links these Defendants to Plaintiff's claims for relief.

Similarly, Plaintiff does not single out any of the Group One Defendants, all of whom are TC counselors, as contributing to the allegedly unconstitutional deprivations. In fact, other than the conclusory statement that these Defendants "ignored and or [sic] supported" the lack of privacy curtains, the Amended Complaint portrays the Group One Defendants as being sympathetic to Plaintiff and helpful to his cause, encouraging him and other prisoners to bring their concerns to the PREA investigators.

The same deficiencies mar the claims against the Group Two Defendants. None of these Defendants are identified, nor are their actions differentiated from each other, in the body of the Amended Complaint, and they appear to only be mentioned in attached exhibits as staff members who refused to provide Plaintiff with informal

grievance forms. (Docket No. 1-2.) Furthermore, even if blanket references to groups of Defendants were permitted (and it is not), Plaintiff's claims against the Group Two Defendants as a whole are still insufficient. For example, Plaintiff states that Defendant Lengerich ordered the Group Two "and or" the Group Three Defendants to take down the top-half curtain on October 25, 2016: The Court cannot speculate which acts are attributable to which Defendants or groups of Defendants. Because the Amended Complaint fails to state what each Group Two Defendant did to Plaintiff, when they did it, and how their actions harmed him, the claims should be dismissed.

Next, Defendant Fowler is listed as part of the Group Three Defendants, but Plaintiff makes no specific allegations regarding his individual actions. Therefore, the Amended Complaint fails to allege sufficient personal participation as to this Defendant.

Finally, Plaintiff states that Defendant Lisac, as the PREA Administrator, is "responsible for making sure that all of the staff here are trained to report the very things that are continuing to happen," and that he failed in his duties by refusing to initiate a PREA investigation. (Docket No. 18 at p. 11.) "Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006). In order to succeed in a Section 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199. Furthermore,

denying or ignoring a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under Section 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). *See also Whitington v. Ortiz*, 307 Fed. Appx. 179, 193 (10th Cir. 2009) (unpublished) (stating that "the denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations") (internal quotation marks and citation omitted). Conclusory allegations of supervisory liability are insufficient to state an arguable claim for relief. *See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991), *aff'd*, 961 F.2d 916 (10th Cir. 1992).

Plaintiff's allegations are insufficient to state a claim for supervisory liability against Defendant Lisac. First, they are conclusory in nature. Second, Plaintiff fails to allege any of the elements necessary to establish supervisor liability, including Defendant's Lisac's state of mind.

Accordingly, the Court recommends that Plaintiff's claims against Defendants Vaughn, Bolton, Grant, Healy, O'Brien, Gebhart, Brunell, Gillis, Scanga, Lague, Wood, Lorenze, Fowler, and Lisac be dismissed for failure to allege personal participation. Plaintiff's Amended Complaint addresses more specifically the actions of Defendants Lengerich, Long, Owens, and Jimerson. The Court will discuss the sufficiency of these claims next.

### iv. Eighth Amendment Claims (Claims One, Two, and Three)

Plaintiff's Claims One, Two, and Three are brought under the Eight Amendment. (Docket No. 18 at pp. 14-15.) The Eighth Amendment prohibits the infliction of "cruel

and unusual punishments." U.S. CONST. amend. VIII. "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Eighth Amendment is not violated unless the conditions deprive a prisoner of "'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The Eighth Amendment is violated when prison officials act with deliberate indifference to a risk of serious harm to inmate health or safety, *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and "may be implicated not only to physical injury, but also by the infliction of psychological harm." *Benefield v. McDowall*, 241 F.3d 1267, 1271–72 (10th Cir. 2001). Prison officials have a duty to protect prisoners from violence at the hands of other inmates. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). However, mere negligence does not violate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). *See also Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990) (deliberate indifference requires a higher degree of fault than negligence or even gross negligence). To prevail on a failure to protect claim, a prisoner must show "that he is incarcerated under conditions posing a substantial risk of serious harm, and that prison officials acted with "deliberate indifference to inmate health or safety . . .." *Farmer*, 511 U.S. at 834. "Deliberate indifference" means that the prison official knew of

and disregarded an excessive risk to prisoner health or safety. *Id.* at 837.

Turning to the objective component, the Tenth Circuit recognizes that prisoners retain a limited constitutional right to bodily privacy, "particularly as to searches viewed or conducted by members of the opposite sex." *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995). *See also Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) (per curiam); *Moore v. Atherton*, No. 00-1510, 28 F. App'x 803, 806 (10th Cir. Nov. 14, 2001) (citing *Hayes*). The frequency with which prison guards watch inmates of the opposite sex undressing, using toilet facilities, and showering "is an important factor in assessing the constitutionality of prison practices." *Hayes*, 70 F.3d at 1147 (citing *Cumbey*, 684 F.2d at 714).

Case law from other circuit courts of appeal is in accord. *See*, *e.g.*, *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir.1993) (recognizing a constitutional right to bodily privacy that might bar female prison guards from watching male inmates as they showered and used the toilet); *Kent v. Johnson*, 821 F.2d 1220, 1226–27 (6th Cir. 1987) (refusing to dismiss complaint that stated that female prison guards routinely saw male prisoners naked, showering, and using the toilet); *Lee v. Downs*, 641 F.2d 1117, 1119–20 (4th Cir. 1981) (stating that "special sense of privacy in their genitals" justifies restricting female prison guards' surveillance of male prisoners). However, a prison practice that infringes upon an inmate's constitutional rights will be upheld if it is rationally related to a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Defendants point out that the Tenth Circuit has analyzed inmates' claims of being viewed by corrections officers of the opposite gender under the Fourteenth Amendment, and that it is unclear whether such allegations give rise to Eighth Amendment liability. The Court does not foreclose the possibility that conditions of confinement that subject inmates to the constant, malicious exposure of their naked bodies to female guards could constitute inhumane treatment. *See Kent*, 821 F.2d at 1227 (finding that plaintiff stated a Fourteenth Amendment claim where "female prison guards have allowed themselves unrestricted views of his naked body in the shower, at close range and for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy"). However, the Court finds that Plaintiff's allegations, construed liberally, do not satisfy the objective component of an Eighth Amendment claim. The Amended Complaint is devoid of specific instances where female staff members actually viewed Plaintiff undressed or using his toilet. Instead, he alleges that the "female staff of Group One hold[] their counseling sessions directly outside our cells all day (mostly) while we have no way to stop them from seeing us undressed[.]" (Docket No. 18 at p. 8.). Plaintiff does not explain where the meetings took place in proximity to his cell, how often they took place (other than they seem to be weekly; but he also alleges a "continuous" violation), how long they lasted ("all day (mostly)" is not sufficiently detailed), or how often other female staff members had

access to his unit.[4] Plaintiff fails to allege that the removal of the privacy curtains was the type of extreme deprivation required to make a conditions-of-confinement claim.[5]

The Court also finds that Plaintiff's allegation that he was threatened by other inmates because the cell curtains were removed does not give rise to Eighth Amendment liability. Plaintiff does not identify the inmates who made the threats, what the threats were, or whom he reported them to, other than "all of the Group Two Defendants." Therefore, Plaintiff fails to establish the subjective element of deliberate indifference. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) ("The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") (citation and quotation marks omitted). Moreover, the installation of higher-watt light bulbs in Plaintiff's cell does not constitute cruel and unusual punishment. *See Woodruff v. Paulson*, 51 F. App'x 822, 824 (10th Cir. 2002) (unpublished).

---

[4] The Court again notes that Plaintiff's proposed Amended Complaint would not have cured these deficiencies.

[5] Even if the Court were to find that Plaintiff stated a claim for cruel and unusual punishment, he was also required to show that this right was clearly established for qualified immunity purposes. *See Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015). Plaintiff did not even attempt to carry this burden. Moreover, while Plaintiff's right to privacy under the Fourth Amendment has been established by Tenth Circuit decisions (see below), there is no controlling authority, nor a clear weight of authority from other courts, that establishes that the surveillance of naked inmates by guards of the opposite sex violates the Eighth Amendment.

For these reasons, the Court recommends that Plaintiff's Claims One, Two, and Three be dismissed.

### v. Right to Bodily Privacy (Claim Four)

Plaintiff alleges that "Defendants forced me to be seen continuously (daily) using the toilet (and or [sic] undressed otherwise) by female counselor(s) and or [sic] staff and or [sic] filming me in the nude[.]" (Docket No. 18 at p. 16.) As noted above, inmates have a constitutional right to privacy under the Fourth Amendment that is violated if "guards regularly watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities, or showering." *Cumbey*, 684 F.2d at 714. Defendants argue that Plaintiff's privacy claim fails because he does not plausibly allege how he was filmed in his cell, or by whom. The Court agrees that Plaintiff's claim that he was recorded in his cell is a bare assertion devoid of factual support. However, the Amended Complaint sufficiently alleges that Plaintiff was forced to be seen by female staff undressed and using the only toilet available to him. Although Plaintiff's allegations may not have been sufficient to state a claim for cruel and unusual punishment, such allegations do state a colorable claim for a violation of his right to privacy. *See id.* ("[T]he plaintiff's statement that the male inmates were subject to a 'certain amount of viewing' by female guards does not necessarily fall short of a cognizable constitutional claim.").

Moreover, Plaintiff alleges sufficient personal participation on the part of the remaining Defendants. He claims that Defendant Lengerich ordered the curtains removed as retaliation against Plaintiff for asserting his rights, and refused to install PREA-compliant curtains for eight months, despite being told by PREA investigators

that their cell doors did not provide sufficient privacy. He further alleges that Defendant Long personally removed the bottom-half curtains of his cells, and that Defendant Owens bragged about taking the curtains and forcing the prisoners to be seen by female staff. Finally, Plaintiff alleges that he showed Defendants Long, Jimerson, and Owens a filing by the Colorado Attorney General's Office which stated that it may be a constitutional violation to allow female staff members to regularly see male prisoners undressed, but that the conditions persisted, with Defendant Jimerson going so far as to tell Plaintiff that "he will not do anything to stop us from being seen undressed by female staff[.]"

The Court acknowledges that Defendants' actions may turn out to have been rationally related to a legitimate penological interest, and therefore not constitutionally repugnant. *See Turner*, 482 U.S. at 89-91. However, Defendants did not raise this argument, and the Court finds that Plaintiff's Amended Complaint, as pleaded, states a Fourth Amendment claim against Defendants Lengerich, Long, Owens, and Jimerson.

### vi. Due Process and Equal Protection (Claims Five and Six)

In Claim Five, Plaintiff alleges that "out of all of the prisons I have been to and of the eight (8) or so housing unit(s) in this current prison[,] my current housing unit is the only housing unit that I (or anyone) have been treated as said above[.]" (Docket No. 18 at p. 16.) Insofar as this can be interpreted as a claim for substantive due process, it plainly fails to state a claim, as it does not identify the liberty issue at stake or the procedures that were constitutionally defective. *See .Stears v. Sheridan Cty. Mem'l*

*Hosp. Bd. of Trustees*, 491 F.3d 1160, 1162 (10th Cir. 2007). Claim Five should be dismissed.

Turning to Plaintiff's equal protection claim, the Equal Protection Clause prohibits the government from treating similarly situated individuals differently. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order for Plaintiff to state an equal protection claim, he must allege that Defendants either denied him a fundamental right or provided differential treatment based on a suspect classification. *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir.1995). If Plaintiff is not a member of a protected class and does not assert a fundamental right, the Court must only determine whether the alleged discriminatory action has a rational basis. *Id.*

Plaintiff's Claim Six states, in its entirety: "The previous Claim Five is completely incorporated." (Docket No. 18 at p. 16.) This does not plead the necessary elements of a equal protection claim. Moreover, the allegations in the Amended Complaint that might possibly relate this claim are nearly incomprehensible. (Docket No. 18 at pp. 12-13.)  Construing the claim as liberally as possible, Plaintiff seems to argue that the TC unit's curtains were removed for security reasons, while the other units, including more dangerous ones, were not treated similarly. However, Plaintiff does not describe how the other units were treated, and relies only conclusory allegations, unsupported by allegations of fact, that he was similarly situated to the inmates in other units. Moreover, Plaintiff fails to allege personal participation on the part of Defendants Long, Owens, or Jimerson, as nothing indicates these Defendants had any authority or control over other

BVCC units. Plaintiff's failure to allege even the bare elements of a due process claim necessitates the dismissal of Claim Six.

### vii. Qualified Immunity

The final question before the Court is whether Defendants Long, Owens, Jimerson, and Lengerich are entitled to qualified immunity on Plaintiff's Claim Four. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court's analysis of qualified immunity in the context of a Rule 12(b)(6) motion is a two-part process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established. *Id.* "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992).

Here, as discussed above, Plaintiff sufficiently alleges that the remaining four Defendants violated his Fourth Amendment privacy rights by removing the curtains on his cell, which resulted in Plaintiff being forced to undress and use the toilet in front of female staff. That right was clearly established, as there are 10th Circuit decisions

24

directly on point. *See Hayes*, 70 F.3d at 1146; *Cumbey*, 684 F.2d at 714. Accordingly, Defendants Long, Owens, Jimerson, and Lengerich are not entitled to qualified immunity.

### III. Recommendation

Based upon the foregoing, it is hereby **RECOMMENDED** as follows:

- That Plaintiff's Motion for Leave of Court to Amend and Supplement Complaint (Docket No. 35) be **DENIED**; and

- That Defendants Colorado Department of Corrections, Vaughn, Bolton, Grant, Healy, O'Brien, Gebhart, Lengerich, Brunell, Gillis, Scanga, Lague, Wood, Lorenze, Long, Fowler, Jimerson, Owens, and Lisac's Motion to Dismiss (Docket No. 26) be **GRANTED IN PART** and **DENIED IN PART**; specifically

  - That Plaintiff's claims against Defendant CDOC be **DISMISSED** under the Eleventh Amendment;

  - That Plaintiff's claims against Defendants Vaughn, Bolton, Grant, Healy, O'Brien, Gebhart, Brunell, Gillis, Scanga, Lague, Wood, Lorenze, Fowler, and Lisac be **DISMISSED** for failure to allege personal participation;

  - That Plaintiff's Claims One, Two, Three, Five, and Six of the Amended Complaint (Docket No. 18) be **DISMISSED** for failure to state a claim; and

• That Plaintiff's Claim Four **PROCEED** only as to Defendants

Lengerich, Long, Owens, and Jimerson.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions,** *Makin v. Colo. Dep't of Corr.***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

BY THE COURT

Date: February 28, 2018                    s/ Michael J. Watanabe
            Denver, Colorado                 Michael J. Watanabe
                                                          United States Magistrate Judge